# UNITED STATES DISTRICT COURT

for the

Eastern District of California

<div style="border:1px solid;">
FILED

**May 05, 2025**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
</div>

|  |  |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| **A red Apple iPhone, IMEI # 355341089912694** | ) |
| **A silver Apple iPhone, IMSI # 310260419099954** | ) |
| **A silver iPad, IMSI # 310410512169294** | ) |
| | ) |

Case No. 2:25-sw-0379 CSK

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 846 and 841(a) | Conspiracy to Distribute a Controlled Substance |
| 21 U.S.C. § 841(a) | Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/
_____
*Applicant's signature*

Lyle Dodson, HSI Special Agent
*Printed name and title*

Sworn to me and signed telephonically.

Date: _____May 5, 2025_____

City and state: _____Sacramento, California_____

_____
*Judge's signature*

Chi Soo Kim, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR WARRANT TO SEARCH DEVICES

I, Lyle R. Dodson, being first duly sworn, hereby depose and state as follows:

## I.    INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—three electronic devices described in Attachment A that were seized in 2017 from Evelyn Magallon and from her then residence at 624 Avon Street, Modesto, California—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.    I am a Special Agent with Homeland Security Investigations ("HSI") and have been since January 2023.  I am currently assigned to the HSI office in Stockton, California.  My duties include investigating the trafficking, importing, and distribution of illicit controlled substances in violation of Title 21 of the United States Code. From January 2024 to December 2024, HSI tasked me to assist the Stanislaus County Sheriff's Office Special Investigations Unit with investigating and interdicting the trafficking of controlled substances, including heroin, methamphetamine, cocaine, fentanyl, prescription pharmaceutical drugs, and others. Based on my training, experience, and conversations with other experienced narcotics investigators, I am familiar with the ways criminals use telephones and social media to plan and carry out crimes, communicate with co-conspirators, arrange meetings and sales of controlled substances, dispose of evidence, thwart detection, and escape prosecution.

3.    Prior to my employment with HSI, I was an Operations Officer and Technology Lead with the Department of Energy ("DOE") Adversary and Interdiction Methods team at the Lawrence Livermore National Laboratory from October 2015 to January 2023.  In this position, I trained, assisted, and worked closely with federal, state and local agencies, including the Federal Bureau of Investigation, in tactics, methods, and technological advances that could be used to

detect and interdict weapons of mass destruction and similarly dangerous substances, such as Fentanyl. In that capacity, I created fake Fentanyl labs and taught law enforcement teams how to properly respond to the situation. I am familiar with how chemical weapons are created, how they affect the human body, and how to protect from them. I am familiar with the similarities between the processes for creating chemical weapons and the processes used for creating illicit drugs, including methamphetamine and Fentanyl.

4.      I completed four Federal Law Enforcement Training Academies, including the Criminal Investigator Training Program and the Homeland Security Special Agent Training Program. As part of these programs, I received extensive training in offenses within the jurisdiction of HSI, including investigation of narcotics trafficking, money laundering, and other Federal violations.

5.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, as well as on facts and information relayed to me by other law enforcement agents.

## II.      **IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

6.      The property to be searched consists of the following electronic devices:

a)      **A red Apple iPhone, IMEI # 355341089912694**, which is assigned HSI evidence Line Item 001 under Seized Assets and Case Tracking System (SEACATS) Case Number 2025281000003601 ("**Subject Device 1**");

b)      **A silver Apple iPhone, IMSI # 310260419099954,** which is assigned HSI Line Item 019 under SEACATS Case Number 2017281000005001 ("**Subject Device 2**");

c)      **A silver iPad, IMSI # 310410512169294** ("**Subject Device 3**"), which is assigned HSI evidence Line Item 002 under SEACATS Case Number 2025281000003601 ("**Subject Device 3**").

7.      The **Subject Devices** are currently located at HSI's secure evidence storage

facility at 603 San Juan Avenue, Stockton, California 95203.  The applied-for warrant would authorize the forensic examination of the **Subject Devices** for the purpose of identifying electronically stored data described in Attachment B.

### III.        FACTS ESTABLISHING PROBABLE CAUSE

***Investigation of Counterfeit Vehicle Identification Numbers (VINs) Leads to Discovery of More than 275 Pounds of Methamphetamine in a Warehouse Used by Evelyn Magallon and Fredy Figueroespino.***

8.        In 2017, Stanislaus Auto Theft Task Force (STANCATT) was investigating a VIN cloning operation.  As part of this operation, counterfeit VINs were applied to late model, high dollar stolen vehicles.

9.        STANCATT's investigation identified numerous vehicles of interest, including multiple vehicles registered to Evelyn Magallon.  Law enforcement officers further found it suspicious that despite Magallon being an unlicensed 20-year old, she was the registered owner of approximately $200,000 in late model vehicles without lien holders.

10.        In August 2017, law enforcement officers conducted surveillance of the addresses associated with Magallon's vehicles, including Magallon's residence at 624 Avon Street, Modesto, California ("Avon Street") and an industrial building located at 1011 5th Street, Unit C (also known as 1001 5th Street, Unit 1011C) ("the Warehouse").

11.        The Warehouse had rolling doors and was large enough to store several vehicles inside.  Magallon's significant other, Fredy Figueroespino, verbally subleased the building, and both Magallon and Figueroespino were frequently seen at the property.

12.        Based on the investigation, STANCATT obtained a state search warrant for Avon Street and the Warehouse, signed by Stanislaus Superior Court Judge Rick Distaso.

13.        On September 6, 2017, the search warrant was executed at the Warehouse at about 7:14 p.m.  In the hours preceding the execution of the search warrant, law enforcement officers observed Magallon and Figueroespino entering and exiting the warehouse.

14.     Upon entering the warehouse, law enforcement officers found large amounts of methamphetamine in plain view.  The scene was frozen until a rollover warrant for the methamphetamine was obtained.

15.     Notably, methamphetamine was located in several vehicles inside the Warehouse, including a black Lexus LX570 registered to Magallon.  Some of the methamphetamine in Magallon's Lexus was packed in Luis Vuitton bags.

16.     Ultimately, 277 pounds of methamphetamine was seized from the Warehouse, as well as four firearms.  Two of those firearms had previously been reported stolen.

***Electronic Devices were seized and searched pursuant to the state search warrant for Avon Street.***

17.     On September 6, 2017, law enforcement officers also executed the state search warrant for Avon Street.  Although no methamphetamine was found at Avon Street, a Ceres Police Department canine alerted to areas within the residence.  Based on my training and experience, I know a canine trained in narcotics detection alerts to an area if it finds narcotics. Based on my training and experience, I know if a canine alerts to an area but no narcotics are found, it suggests narcotics were there in the recent past.

18.     In Magallon's master bedroom closet, law enforcement officers found Luis Vuitton boxes and a baby shower gift bag that were visually similar to the Louis Vuitton bags and baby shower gift bag full of methamphetamine found in Magallon's Lexus located in the Warehouse.

19.     During the execution of the Avon Street warrant, law enforcement officers seized **Subject Device 1** from Magallon's person, **Subject Device 2** from the night stand next to the bed in the master bedroom, and **Subject Device 3** from the master bedroom closet near the iPhone boxes for **Subject Devices 1 and 2**.

20.     Law enforcement officers arrested Magallon for the methamphetamine found in the Warehouse. They were unable to locate Figeroespino, so a warrant was issued for his arrest.

*Magallon absconded, and she and Figueroespino were fugitives for more than seven years.*

21.    On September 25, 2017, a criminal complaint was filed against Magallon and Figueroespino alleging violations of 21 U.S.C. §§ 846, 841(a)(1) (conspiracy to possess with intent to distribute) and 21 U.S.C. § 841(a)(1) (possession with intent to distribute) in case number 1:17-cr-232.  On October 5, 2017, the grand jury returned an indictment against Magallon and Figueroespino for the same charges in the complaint.

22.    Prior to the indictment being filed, Magallon was released under certain conditions, including location monitoring and a property bond.

23.    On March 30, 2018, Magallon removed her ankle monitor and absconded.  Efforts to locate her were unsuccessful.

24.    More than 7 years later, on June 17, 2024, Magallon and Figueroespino were found by local law enforcement after Figueroespino threatened Magallon's brother and threw rocks at his house.  Notably, the incident occurred at 624 Avon Street, Modesto, California – the same residence the phones were seized from in 2017.  Both defendants were arrested on their outstanding federal warrants.

*Prior Search of the Subject Devices*

25.    The **Subject Devices** were previously seized in September 2017 pursuant to a state search warrant.  State law enforcement officers later shared the data obtained from that search warrant with HSI.  This affidavit does not rely on the fact of that state search warrant or the results of the state search warrant as probable cause for the instant search warrant.

26.    The **Subject Devices** are currently in the lawful possession of HSI at HSI's secure evidence facility in Stockton, California.  Based on my training and experience, I know the **Subject Devices** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the **Subject Devices** first came into the possession of law enforcement.

27.    While HSI  might already have all necessary authority to examine the **Subject Devices**, I seek this additional warrant out of an abundance of caution to be certain that an

examination of the **Subject Devices** will comply with the Fourth Amendment and other applicable laws.

28.    Based on my training and experience, given the passage of time and updates in technology, I believe evidence exists on the **Subject Devices** which was not captured in the original Cellebrite extractions due to technological limitations.

***Probable Cause to Believe the Subject Devices Contain Evidence of Methamphetamine Trafficking***

29.    Based on my training, experience, conversations with other law enforcement agents, and the investigation in this case, I believe Magallon and Figueroespino were involved in the trafficking of methamphetamine in 2017.

30.    Based on my training and experience, and my discussions with other law enforcement personnel, I know it is common for perpetrators of narcotics-related crimes to use electronic devices to obtain information for the execution of their crimes or to disseminate information to other individuals.  I also know perpetrators of these crimes may reside and/or have committed these offenses within different cities and counties and may rely on mobile and electronic forms of communication with each other regarding their illegal activities.

31.    Based on my training and experience and my conversations with other law enforcement personnel, I know persons involved in narcotics-related crimes, along with their co-conspirators and accomplices, use electronic devices (e.g., cellphones, smart phones, tablets, laptops, computers) to communicate with one another, either by voice calls, emails, or text messages regarding their activities.

      a)    I know perpetrators who use such electronic devices commonly exchange real time information about their activities. Such information can be found stored in the text messages, email messages, and images on such devices.

      b)    Such persons also use the electronic devices to link with the internet to obtain addresses, maps, and locations; track parcels containing controlled substances; and to

complete financial transactions related to their crimes. Such devices can also be used to distribute the proceeds of illegal activities to co-conspirators via banking and money-transfer applications.

32.      Based on my training and experience and my conversations with other law enforcement personnel, I know the complete contents of text messages, image files, and emails may be important to establishing the actual user who has dominion and control of a particular electronic device at a given time.

a)      Cell phones may be subscribed to under false names with little to no verification by the service provider.  Cell phones and computers may also be used by multiple people.

b)      Given the ease with which such items may be obtained and used, and the rarity with which law enforcement has eyewitness testimony about a defendant's use of a particular cell phone or device that was used to send a particular text or email message, investigators often have to rely on circumstantial evidence to show that an individual was the actual user of a particular cell phone or device.

c)      Often, by piecing together information contained in the contents of the electronic device, an investigator can establish the identity of the actual user.

d)      Often, those pieces will come from a time period before the device was used in criminal activity.

e)      Limiting the scope of the search for information showing the actual user of the device would, in some instances, prevent the government from identifying the user of the device and, in other instances, allow a defendant to possibly suggest someone else was responsible.

f)      Therefore, the entire content of a communication device often provides important evidence regarding the actual user's dominion and control of the device.

g)      Moreover, review of the contents of communications of electronic storage devices, including text and email messages sent or received by the subject device, assist in

AFFIDAVIT

7

determining whether other individuals had access to the device.

33.     Based on my training and experience and my conversations with other law enforcement personnel, I know criminals discussing their criminal activity via electronic devices (e.g., email and text messaging) may use images, slang, short forms (abbreviated words or phrases such as "lol" to express "laugh out loud"), or code words (which require entire strings or series of text message conversations to determine their true meaning) when discussing their crimes.

a)     They can also discuss aspects of the crime without specifically mentioning the crime involved.  It is even possible to use pictures, images and emoticons (images used to express a concept or idea such as a happy face inserted into the content of a text message or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and parentheses :) to convey a smile or agreement) to discuss matters.

b)     "Keyword searches" or other automated methods of review of the text messages sent to and from the subject device would not account for any of these possibilities, so actual review of the text and email messages by law enforcement personnel with information regarding the identified criminal activity is necessary to find all relevant evidence.

34.     Based on my training and experience, I know electronic devices contain location data.  Location data may show the defendants' travel locations as well as other location related activity that would be evidence of drug trafficking.

35.     Based on my training and experience, I know electronic device account activity will also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

36.     Based on my knowledge, training, and experience, I know electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

internet are typically stored for some period of time on an electronic device. This information can sometimes be recovered with forensics tools.

a)      I know that even if a perpetrator deletes evidence of criminal activity from electronic storage devices, the evidence often can be recovered from the devices, including computers or other forms of electronic storage media.

b)      Based on my knowledge, training, and experience, I know computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

c)      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space-that is, in space on the storage medium that is not currently being used by an active file-for long periods of time before they are overwritten.

d)      In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Wholly apart from user-generated files, computer storage media - in particular, computers' internal hard drives - contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.

e)      To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

f)      Similarly, files that have been viewed via the internet are sometimes automatically downloaded into a temporary internet directory or "cache."

## IV.     TECHNICAL TERMS

37.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a)     Wireless telephone:  A wireless telephone (or mobile telephone or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter and receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b)     Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c)     Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or

photographic files.  However, a portable media player can also store other digital data.
Some portable media players can use removable storage media.  Removable storage
media include various types of flash memory cards or miniature hard drives.  This
removable storage media can also store any digital data.  Depending on the model, a
portable media player may have the ability to store very large amounts of electronic data
and may offer additional features such as a calendar, contact list, clock, or games.

d)      GPS Navigation device:  A GPS navigation device uses GPS to display its current
location.  It often records the locations where it has been.  Some GPS navigation devices
can give a user driving or walking directions to another location.  These devices can
contain records of the addresses or locations involved in such navigation.  The GPS
consists of 24 Navigation Satellite Timing and Ranging (NAVSTAR) satellites orbiting
the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly
transmits by radio a mathematical representation of the current time, combined with a
special sequence of numbers.  These signals are sent by radio, using specifications that
are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS
antenna receives signals from at least four satellites, a computer connected to that antenna
can mathematically calculate the antenna's latitude, longitude, and sometimes altitude
with a high level of precision.

e)      Personal Digital Assistant ("PDA"):  A PDA is a handheld electronic device used
for storing data (such as names, addresses, appointments or notes) and utilizing computer
programs.  Some PDAs also function as wireless communication devices and are used to
access the internet and send and receive e-mail.  PDAs usually include a memory card or
other removable storage media for storing data and a keyboard and/or touch screen for
entering data.  Removable storage media include various types of flash memory cards or
miniature hard drives.  This removable storage media can store any digital data.  Most
PDAs run computer software, giving them many of the same capabilities as personal
computers.  For example, PDA users can work with word-processing documents,

spreadsheets, and presentations.  PDAs may also include GPS technology for determining the location of the device.

f)      Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen.  Tablets function as wireless communication devices and can be used to access the internet through cellular networks, 802.11 "Wi-Fi" networks, or otherwise.  Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the internet, sending and receiving email, and participating in internet social networks.

g)      Pager:  A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network.  Some pagers enable the user to send, as well as receive, text messages.

h)      Internet Protocol ("IP") Address: An IP address is a unique numeric address used by computers on the internet.  An IP address can come in two versions, version 4 or version 6 (known as IPV4 or IPV6).  An IPV4 address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  An IPV6 number is comprised of a series of eight groups of four digits or letters from A to F, separated by a colon (e.g., 1001:ABCD:E004:0001:1234:1000:1000:F00A). Every computer attached to the internet must be assigned an IP address so that internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most internet service providers control a range of IP addresses.  Some computers have static— that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i)      Internet: The internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the internet, connections between devices on the internet often cross state and international borders, even when the devices communicating with each other are in the same state.

38.    Based on my training and experience, I know the Subject Devices have capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, PDAs, tablets, and pagers.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## V.    FORENSIC ANALYSIS

39.    As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant but also forensic evidence that establishes how the Subject Devices were used, the purpose of their use, who used them, and when.  There is probable cause to believe this forensic electronic evidence might be on the Subject Devices because:

a)    Data on the storage medium can provide evidence of a file, or a portion of a file (such as a paragraph in a word processing file) that was once on the storage medium but has since been deleted or edited.  Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Internet browsers, email programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use.  Computer file systems can record information about the dates files were created and the sequence in which they were created.

b)    Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c)    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions

about how electronic devices were used, the purpose of their use, who used them, and when.

d)      The process of identifying the exact electronically stored information on a storage medium necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e)      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

40.     Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrant I am applying for would permit the examination of the **Subject Devices** consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection to determine whether it is evidence described by the warrant.

41.     Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

# VI.     CONCLUSION

42.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **Subject Devices** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/s/

Lyle R. Dodson
Special Agent
HSI

Subscribed and sworn to me telephonically on:     May 5, 2025

Honorable Chi Soo Kim
UNITED STATES MAGISTRATE JUDGE

Approved as to form by:

NICOLE MOODY
Special Assistant United States Attorney

## <u>ATTACHMENT A</u>

The property to be searched consists of the following electronic devices seized from Magallon and her residence on September 6, 2017:

1) **A red Apple iPhone, IMEI # 355341089912694** ("**Subject Device 1**").  **Subject Device 1** is booked as HSI evidence Line Item 001 under SEACATS Case Number 2025281000003601 and is currently in the custody of HSI at 603 San Juan Avenue, in Stockton, California.

2) **A silver Apple iPhone, IMSI # 310260419099954** ("**Subject Device 2**"). **Subject Device 2** is booked as HSI evidence Line Item 019 under SEACATS Case Number 2017281000005001 and is currently in the custody of HSI at 603 San Juan Avenue, in Stockton, California.

3) **A silver iPad, IMSI # 310410512169294** ("**Subject Device 3**").  **Subject Device 3** is booked as HSI evidence Line Item 002 under SEACATS Case Number 2025281000003601 and is currently in the custody of HSI at 603 San Juan Avenue, in Stockton, California

## ATTACHMENT B

All records and contents on the **Subject Devices** described in Attachment A that relate to violations of 21 U.S.C. §§ 846 and 841(a), Conspiracy to Distribute a Controlled Substance, and 21 U.S.C. § 841(a), Possession with Intent to Distribute a Controlled Substance, including:

1. Any information related to the brokering, selling, purchasing, trading, dealing, manufacturing, or transporting of drugs;

2. Lists of drug customers and related identifying information;

3. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

4. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

5. Any communications between Magallon, Figueroespino, and/or other co-conspirators;

6. Any photographs or video recordings depicting controlled substances and/or United States currency;

7. Any information regarding schedule or travel;

8. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including text messages, voicemail messages or voice notes, any form of computer or electronic storage (such as flash memory or other media that can store data), videos, and any photographic form.

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of )<br><br>**A red Apple iPhone, IMEI # 355341089912694** )<br>**A silver Apple iPhone, IMSI # 310260419099954** )<br>**A silver iPad, IMSI # 310410512169294** )<br>) | Case No.   2:25-sw-0379 CSK |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____May 19, 2025_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     May 5, 2025 at 1:12 p.m.              *Judge's signature*

City and state:     Sacramento, California              Chi Soo Kim, U.S. Magistrate Judge
                                                             *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| **Certification** |
|---|

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.


_____          _____
Signature of Judge                                         Date

## ATTACHMENT A

The property to be searched consists of the following electronic devices seized from Magallon and her residence on September 6, 2017:

1) **A red Apple iPhone, IMEI # 355341089912694** ("**Subject Device 1**"). **Subject Device 1** is booked as HSI evidence Line Item 001 under SEACATS Case Number 2025281000003601 and is currently in the custody of HSI at 603 San Juan Avenue, in Stockton, California.

2) **A silver Apple iPhone, IMSI # 310260419099954** ("**Subject Device 2**"). **Subject Device 2** is booked as HSI evidence Line Item 019 under SEACATS Case Number 2017281000005001 and is currently in the custody of HSI at 603 San Juan Avenue, in Stockton, California.

3) **A silver iPad, IMSI # 310410512169294** ("**Subject Device 3**"). **Subject Device 3** is booked as HSI evidence Line Item 002 under SEACATS Case Number 2025281000003601 and is currently in the custody of HSI at 603 San Juan Avenue, in Stockton, California

## ATTACHMENT B

All records and contents on the **Subject Devices** described in Attachment A that relate to violations of 21 U.S.C. §§ 846 and 841(a), Conspiracy to Distribute a Controlled Substance, and 21 U.S.C. § 841(a), Possession with Intent to Distribute a Controlled Substance, including:

1. Any information related to the brokering, selling, purchasing, trading, dealing, manufacturing, or transporting of drugs;

2. Lists of drug customers and related identifying information;

3. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

4. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

5. Any communications between Magallon, Figueroespino, and/or other co-conspirators;

6. Any photographs or video recordings depicting controlled substances and/or United States currency;

7. Any information regarding schedule or travel;

8. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including text messages, voicemail messages or voice notes, any form of computer or electronic storage (such as flash memory or other media that can store data), videos, and any photographic form.